AO 106 (Rev. 07/87) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

FILED 08 FEB 22 PM 12:24
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DISTRICT OF CALIFORNIA

In the Matter of the Search of

(Name, address, or brief description of person, property or premises to be searched)

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

The Premises of Rodney PARKER
8467 Springfield Street
San Diego, CA 92114

CASE NUMBER: '08 MJ 0520

I, Matthew Beals, being duty sworn depose and say: I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives and have reason to believe

that on the property or premises known as (name, description and/or location)

***SEE ATTACHMENT A***

In the Southern District of California there is now concealed a certain person or property, namely (describe the person or property to be seized

***SEE ATTACHMENT B***

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

property which constitutes evidence of the commission of a criminal offense concerning a violation of Title 18 United States Code, Section 922 (g)(1) and Title 21 United States Code, Section 841(a)

The facts to support a finding of Probable Cause are as follows:

***SEE ATTACHMENT C***

Continued on the attached sheets and made a part hereof.

Matthew B[signature]
Signature of Affiant

Sworn to before me, and subscribed in my presence

2/17/08 at San Diego, CA

Date City and State

[signature]

William McCurine, Junior
U.S. Magistrate Judge

[signature]
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Matthew W. Beals, being duly sworn, depose and state that:

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed for approximately six years.

2. I am currently assigned to the San Diego, California Field Office. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy; as a result of my training and experience as an ATF Agent, I am familiar with federal and state criminal laws. My primary duties have been the enforcement of federal firearm, arson and explosive laws. I have participated in numerous investigations of possession of firearms by prohibited persons and the possession of illegal firearms. I have participated in investigations that involved interstate and international firearm trafficking. I have also participated in the searches of numerous residences and businesses involving federal and state firearm violations.

3. This affidavit is in support of a search warrant for the residence of Rodney PARKER, located at 6847 Springfield Street, San Diego, California 92114, for firearms, firearm records, narcotics and documents which evidence the sale, transfer or possession of firearms and narcotics by PARKER. These firearms, records and narcotics are evidence of violations of Title 18 U.S.C. § 922(g)(1) – felon in possession of firearms and Title 21 U.S.C. § 841(a) – possession of a controlled substance.

4. On February 16, 2008, ATF and ICE Special Agents conducted surveillance at a Crossroads of the West Gun Show at the Del Mar Fairgrounds, located at 2260 Jimmy Durante Boulevard, Del Mar, California 92014.

5. On the same date as above, at approximately 1:15 PM, Special Agent (SA) J. Scott Wakelin observed a Hispanic, male drive a Mercury Mountaineer bearing California license plate 4UPT113 into the parking lot where patrons attending the gun show parked their vehicles. According to SA Wakelin, the Hispanic, male was accompanied by a white, female. SA Wakelin observed the two individuals exit the vehicle and proceeded to enter the gun show. SA Wakelin observed what he believed to be multiple prison tattoos on the forearms and elbows of the Hispanic, male.

6. On the same date as above, SA Wakelin caused a query California Department of Motor Vehicle (DMV) records to be executed and determined that the vehicle that bore California license plate 4UPT113 was registered to Rodney PARKER at 6847 Springfield Street, San Diego, California 92114. SA Wakelin next queried DMV records and learned PARKER's Driver's License number was A2396532 and that he was born on July 22, 1975; SA Wakelin also obtained PARKER's physical description. SA Wakelin then queried the National Crime Information Center (NCIC) and California Law Enforcement Telecommunications System (CLETS). The NCIC and CLETS queries revealed that on August 8, 1997, PARKER was convicted of violating California Penal Code 273.5(A) – domestic violence, a felony, in the El Cajon Municipal Court. The NCIC and CLETS queries also revealed that on November 6, 2001, PARKER was convicted of violating California Health and Safety Code 11377(A) – possession of narcotics for sale, a felony, in the Superior Court of Chula Vista.

7. On the same date as above, at approximately 4:30 PM, SA Wakelin observed the previously-mentioned Hispanic, male and white, female exit the gun show and proceed to the vehicle they arrived

in. SA Wakelin observed each individual carrying plastic bags; however, he noticed that PARKER's bag appeared to contain a box similar in shape and apparent weight to a standard box of ammunition. SA Wakelin then observed the Hispanic, male drive the vehicle out of the parking lot and onto Jimmy Durante Boulevard heading north.

8. On the same date as above, San Diego Sheriff's Department Detective Conrad Berlinsky, initiated a traffic stop of the aforementioned vehicle as he observed that it was in violation of California Vehicle Code 26708(a) – tint on windows. Detective Berlinsky obtained California Driver's Licenses for the Hispanic, male and white, female. The Hispanic, male was identified as Rodney PARKER. The white, female was identified as Angela WITTMER.

9. On the same date as above and during the traffic stop, SAs Wakelin and Matt Beals contacted PARKER. SA Wakelin and Beals identified themselves as ATF Agents. SA Wakelin advised PARKER that he was not under arrest and that he did not have to talk to him if he chose not to. PARKER stated that he understood. PARKER then confessed that he purchased one box that contained 50 rounds of .32 caliber ammunition while he was at the gun show. PARKER also stated that he knew he was a convicted felon. WITTMER stated that she was PARKER's girlfriend. WITTMER also advised SDSD Detectives that she had completed the paperwork to purchase one handgun at the gun show. SAs Wakelin and Beals approached WITTMER and identified themselves to her as well. WITTMER stated that she knew PARKER purchased the aforementioned ammunition; however, she claimed that it was a gift for her uncle.

10. On the same date as above, SA Wakelin advised PARKER that he was under arrest. SAs Wakelin and Beals also advised WITTMER that she was being detained and was going to be taken to ATF for questioning. PARKER was searched prior to being transported; SA Wakelin found one receipt for the previously-mentioned ammunition and approximately $1,800.00 in cash. WITTMER's purse contained approximately $200.00 in cash.

11. On the same date as above, SA Beals placed a recording device in his Government Owned Vehicle (GOV), a 2005, Chevrolet, Impala. SA Beals advised PARKER and WITTMER that they were going to be transported in his GOV to ATF for questioning and processing.

12. On the same date as above, SAs Wakelin, Beals and ICE SA Jeffrey Pryor conducted a search incident to arrest/tow inventory of PARKER's vehicle. SA Beals noted that the center consol to the vehicle was loose and not secured to the rest of the vehicle's interior. SA Beals was able to pull the center consol up and found one Ruger .45 caliber revolver closest to the driver's seat. SA Wakelin found one FIE .25 caliber pistol and ten rounds of .45 caliber ammunition in the same area, but closest to the passenger's seat. Each of the aforementioned firearms was loaded.

13. On the same date as above, SA Joseph Mokos reviewed the digital recording device that was operating while PARKER and WITTMER were in SA Beals' GOV during the search of PARKER's vehicle. SA Mokos heard WITTMER tell PARKER that she would take the blame for the two firearms that were located in the vehicle and that she would get them out of trouble. PARKER responded and told WITTMER that his fingerprints would be found on the firearms and that it didn't matter what she said. SA Mokos also heard WITTMER tell PARKER that they should claim the money found on PARKER was from the recent sale of her vehicle. SA Mokos also heard PARKER tell WITTMER that they needed to call "Julia", his roommate, to have her clear everything out of the house. PARKER

specifically told WITTMER that he had "two" of something at his house; however, SA Mokos could not determine what exactly PARKER told her after the word 'two.'

14. On the same date as above, PARKER asked SA Beals if he could get his cellular telephone because he needed to call two people. SA Beals then advised SA Wakelin that PARKER wanted to use his telephone. PARKER told SA Wakelin that he needed to call "Julia", his roommate and "Nicole", the mother of his two children. PARKER also told SA Beals that he smoked methamphetamine prior to attending the gun show earlier that day. PARKER advised SA Beals that he was unemployed.

15. On the same date as above, SAs Beals and Wakelin conducted an interview of WITTMER. WITTMER stated that she had been dating PARKER for approximately eight months. WITTMER stated that she knew PARKER's roommate's name was "Julia." However, she did not provide any additional information as to PARKER's residence or his roommate. WITTMER also stated that she had been addicted to methamphetamine for the last eight years. WITTMER stated that she too smoked methamphetamine prior to attending the gun show earlier that day. According to WITTMER, she often smokes methamphetamine with PAKER. WITTMER stated that PARKER has smoked methamphetamine for as long as they have been dating. WITTMER advised SA Beals that she was unemployed.

16. On the same date as above, SA Gordon Geerdes queried the Automated Regional Justice Information System (ARJIS). The ARJIS query revealed that on December 10, 2007, Julia CHAVEZ, born March 4, 1973, pawned jewelry at Lemon Grove Pawn. The pawn slip associated with this transaction indicated that CHAVEZ' address was 6847 Springfield Street, San Diego, California 92114.

17. On the same date as above, SA Geerdes queried DMV records. The DMV query indicated that Julia CHAVEZ, California Driver's License A9131033, born March 4, 1973, resided at 6847 Springfield Street, San Diego, California 92114.

18. Based on my training and experience, consultation with other agents from ATF, and all of the facts and opinions set forth in this affidavit, I know:

a. It is common for individuals who illegally acquire, possess and sell firearms to keep firearms and documents related to the acquisition and disposition of firearms at their residence, businesses, and in their vehicles for an indefinite period of time;

b. It is common for individuals who possess firearms (whether lawfully or unlawfully) to possess items relating to those firearms, which includes ammunition, magazines, holsters, parts, photographs of firearms and receipts for the purchase of those items in their residences, businesses, and vehicles;

c. It is also common for individuals involved in the illegal possession of firearms to store those items at places other than their residences, such as storage units or outbuildings. However, they often maintain receipts or other documentation related to those storage locations in their residences, businesses, and vehicles.

d. It is common for individuals that possess, use and transport narcotics to maintain firearms in their residences, businesses and vehicles to protection and intimidation.

18. Consequently, based on my training, experience, and the above-mentioned facts, I believe there is probable cause to believe that PARKER possesses at least one .32 caliber pistol, documents related to the possession, acquisition and disposition of firearms, documents such as pay-owe sheets for narcotic transactions and drug-use paraphernalia at his residence.

19. Additionally, based upon prior searches of premises used by individuals involved in the illegal possession of firearms, I have probable cause to believe that I will find articles of personal property and documents evidencing the identity of persons occupying, possessing, residing in, owning, frequenting, or controlling the premises. I also know that persons who possess firearms (whether lawfully or unlawfully) usually keep them for their personal use. Furthermore, individuals involved in the illegal possession, whether registered or unregistered, do so in large part because they do not want to be identified by law enforcement. Therefore, these individuals go through surreptitious means to acquire, maintain, and transfer or sell firearms without complying with state and federal laws. By doing this, these individuals attempt to thwart efforts to trace firearms, making it difficult for law enforcement to identify the last known purchaser of a firearm recovered from a crime scene.

21. Therefore, based on my training, experience, and the above facts, which I believe to be true, I have probable cause to believe that the above described property or a portion thereof will be at the described premises when the warrant is served and that such items would constitute evidence of a felon in possession of firearms and possession of narcotics. With the above information, I formally request the issuance of a search warrant for the aforementioned premises.

Further affiant sayeth not.

I declare under penalty and perjury that the foregoing is true and correct to the best of my knowledge.

MATTHEW W. BEALS
Special Agent,
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me and subscribed in my presence, in San Diego, California, on February 17, 2008.

William McCurine, Junior
United States Magistrate Judge